IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 13, 2016

**STATE OF TENNESSEE v. ROBERT C. CLANTON**

**Appeal from the Circuit Court for Bedford County**
**No. 18063     Forest A. Durard, Jr., Judge**

_____

**No. M2015-02438-CCA-R3-CD – Filed September 21, 2016**

_____


Defendant, Robert Carlyle Clanton, was convicted by a Bedford County jury of ten drug-related offenses for the sale of methamphetamine to a confidential informant. The trial court imposed a total effective sentence of twenty-three years and six months. On appeal, Defendant's sole issue is that the trial court imposed an excessively lengthy sentence. Upon our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Donna Orr Hargrove, District Public Defender; James R. Tucker, Jr. (on appeal) and Andrew Jackson Dearing III (at trial), Assistant Public Defenders, for the appellant, Robert C. Clanton.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

*Factual and Procedural Background*

In May 2015, a Bedford County Grand Jury returned an eleven-count indictment charging Defendant with conspiracy to sell or deliver less than .5 grams of a Schedule II controlled substance, a Class D felony; sale and delivery of less than .5 grams of a Schedule II controlled substance, Class C felonies; sale and delivery of more than .5

- 1 -

grams of a Schedule II controlled substance, Class B felonies; possession of more than .5 grams of a Schedule II controlled substance with the intent to sell and deliver, Class B felonies; possession of more than .5 grams of a Schedule II controlled substance with the intent to sell and deliver in a school zone, Class A felonies; and two counts of possession of drug paraphernalia, Class A misdemeanors. *See* T.C.A. § 39-12-107(c); 39-17-417(a), (c); 39-17-425(a); 39-17-432(b). Defendant was tried before a jury and convicted in August 2015. Because Defendant is not challenging the sufficiency of the evidence, we will only briefly summarize the evidence adduced at trial.

In July of 2014, officers with the 17th Judicial District Drug Task Force were investigating Defendant, who also went by the aliases Kyle Clanton, Skinny, and Slim. They were assisted by a confidential informant named Brian Serrett, who contacted the Drug Task Force after being released from jail on an unrelated domestic violence charge. Mr. Serrett was searched before and after each transaction, wore a recording device during each transaction, and conducted each transaction under constant police surveillance. Mr. Serrett was paid for each controlled buy in which he participated. Audio recordings of Mr. Serrett's phone calls with Defendant arranging each transaction as well as audio recordings of the actual transactions were entered into evidence.

On July 23, 2014, Mr. Serrett went to the mobile home of Michael Bryan to buy a morphine pill. During the course of that transaction, they discussed the purchase of methamphetamine, also known as "crystal meth." A subsequent controlled buy was set up for $65 worth of crystal meth. During that transaction, Mr. Bryan took the money from Mr. Serrett and left his home, telling Mr. Serrett that he was going to meet his supplier, Skinny. Mr. Bryan drove to a nearby gas station where he briefly met with Defendant. Mr. Bryan then returned to the mobile home and handed Mr. Serrett a small plastic bag containing a crystalline substance, later determined to be .25 grams of methamphetamine. This incident formed the basis of Count 1 of the indictment—conspiracy to sell or deliver less than .5 grams of a Schedule II controlled substance.

On July 30, 2014, Mr. Serrett and the Drug Task Force set up a controlled buy of methamphetamine directly from Defendant. Mr. Serrett told the officers that earlier that day, he had been introduced to Defendant by Mr. Bryan and that Defendant had "fronted" him a half gram of crystal meth, meaning that payment was expected at a later time. Mr. Serrett, at the direction of the Drug Task Force, called Defendant and told him that he had the money and also wanted to purchase an additional half gram. Mr. Serrett got into the passenger side of a blue PT Cruiser driven by Defendant, who then drove to a mechanic shop belonging to a man who had been previously convicted of manufacturing methamphetamine. Defendant and Mr. Serrett went into the shop to conduct the transaction. No one else was in the shop. After Mr. Serrett gave Defendant the money, Defendant went into a room and returned a few minutes later with the drugs. Mr. Serrett then left the shop on foot and was picked up by the Drug Task Force. Mr. Serrett turned

over the drug he purchased from Defendant, which was determined to be .33 grams of methamphetamine. Mr. Serrett admitted on cross-examination that he did not turn over the fronted crystal meth to the Drug Task Force but gave it to a woman in exchange for a morphine pill. This incident formed the basis of Counts 2 and 3 of the indictment—sale and delivery of less than .5 grams of a Schedule II controlled substance.

Later that same day, Mr. Serrett and the Drug Task Force arranged a second purchase from Defendant for $300 worth of crystal meth. Mr. Serrett was again picked up by a blue PT Cruiser driven by Defendant. While Defendant drove around the block, he and Mr. Serrett exchanged $300 for an "8 ball," or approximately 3 grams of crystal meth. Defendant dropped off Mr. Serrett, who then proceeded to meet with the Drug Task Force. Other officers continued to follow Defendant's vehicle for a while before initiating a traffic stop. Searches of Defendant's person and vehicle uncovered 1.91 grams of methamphetamine, $340 in cash (including the previously recorded buy money), a digital scale, plastic baggies, and some Xanax tablets. Defendant was Mirandized[1] and told that the Drug Task Force was interested in his methamphetamine suppliers. Defendant indicated he was willing to cooperate with the Drug Task Force. Defendant admitted that he sold methamphetamine as his main source of income and named several of his suppliers. The officers released Defendant with instructions to stay in contact with them, but Defendant never contacted or assisted the Drug Task Force. This incident formed the basis of Counts 4 through 8—sale and delivery of more than .5 grams of a Schedule II controlled substance, possession of more than .5 grams of a Schedule II controlled substance to sell and deliver, and possession of drug paraphernalia.

On September 2, 2014, Mr. Serrett again informed the Drug Task Force that he had been in contact with Defendant. At the direction of the Drug Task Force, Mr. Serrett arranged to buy $100 of methamphetamine from Defendant. Defendant indicated to Mr. Serrett that he wanted guns in exchange for the drugs, and Mr. Serrett led Defendant to believe that he could acquire some. At the prearranged meeting location, Defendant picked up Mr. Serrett in a maroon Jeep Grand Cherokee and, at Defendant's suggestion, drove to the mobile home park where Mr. Serrett lived. The mobile home park was located less than 300 feet from the property of Learning Way Elementary School. Mr. Serrett gave Defendant the $100 of buy money, then went into a neighboring mobile home on the pretense of inquiring about the guns. Mr. Serrett returned to Defendant's vehicle, told Defendant that the neighbor with the guns was not home, and waited while Defendant weighed out some crystal meth on a set of digital scales. The Drug Task Force then had an officer with the local sheriff's department approach Defendant to arrest him on outstanding warrants. As the officer approached Defendant's vehicle, Defendant threw several bags containing a white, crystalline substance out of the window. After Defendant was arrested, the bags were recovered and were determined to contain a total

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

of 2.93 grams of methamphetamine. Defendant was also found to be in possession of over $100 in currency (including the previously recorded buy money), a digital scale, and a knife. This incident formed the basis of Counts 9 through 11—possession of more than .5 grams of a Schedule II controlled substance for sale and delivery in a school zone and possession of drug paraphernalia.

After hearing the proof, the jury convicted Defendant as charged on all counts except for Count 1, conspiracy to sell or deliver a controlled substance, upon which the jury could not reach a verdict. The trial court declared a mistrial on that count and the State subsequently dismissed it. The trial court merged Count 3, delivery of less than .5 grams of a Schedule II controlled substance, with Count 2, sale of less than .5 grams of a Schedule II controlled substance; Count 5, delivery of more than .5 grams of a Schedule II controlled substance, with Count 4, sale of more than .5 grams of a Schedule II controlled substance; Count 7, possession of more than .5 grams of a Schedule II controlled substance for delivery, with Count 6, possession of more than .5 grams of a Schedule II controlled substance for sale; and Count 10, possession of more than .5 grams of a Schedule II controlled substance for delivery in a school zone, with Count 9, possession of more than .5 grams of a Schedule II controlled substance for sale in a school zone.

At the sentencing hearing, the State entered into evidence the presentence report which showed that Defendant had two prior convictions for driving under the influence and one for evading arrest as well as a ticket for a seatbelt violation. The State then called Director Timothy Lane of the 17th Judicial District Drug Task Force to testify about the drug activity within the district, particularly with regards to methamphetamine. Director Lane testified that incarceration provides an effective deterrent both to those convicted of selling methamphetamine and those considering selling it.

Defendant testified on his own behalf. Defendant testified that he had been addicted to methamphetamine for approximately two years. Defendant stated that he began using to deal with his mother's suicide and that his use increased when he had marital troubles and after his young cousin committed suicide. Because of his addiction, Defendant lost his job as a truck driver and stopped spending time with his children. Defendant testified that while using, he would often go twenty or thirty days without sleeping and that his memory of that time would blur together. Defendant testified that he was willing participate in a long-term drug rehabilitation program. Defendant admitted that what he did was wrong and stated that he felt awful about it. On cross-examination, Defendant initially stated that he could not remember the names of his suppliers before admitting that he simply did not want to give up their names.

Defendant also called three witnesses to testify on his behalf: his father, Robert E. Clanton, Jr.; Jay Pope, the pastor of Lighthouse Church and director of Fresh Start

Ministry; and Amy Star Wilson, Defendant's common law wife. Mr. Clanton testified that he had spoken with Defendant numerous times since Defendant was incarcerated and that he believed that the "old Kyle" was back. Mr. Clanton asked the trial court to show mercy and to give Defendant the minimum sentence. Mr. Pope testified that he had spoken to and corresponded with Defendant and would be willing to admit Defendant into his rehabilitation program upon Defendant's release. Ms. Wilson testified that she and Defendant have two children together and asked the trial court for leniency.

The trial court found that Defendant was a Range I offender. The trial court found that Defendant had a previous history of convictions or criminal behavior in addition to those necessary to establish the range. The trial court did not find any mitigating factors to exist. The trial court imposed a sentence of five years for merged Counts 2 and 3, eleven years for merged Counts 4 and 5, twelve years for merged Counts 6 and 7, eleven months and twenty-nine days for both Counts 8 and 11, and twenty-three years and six months for merged Counts 9 and 10. The trial court ordered that the sentences be served concurrently, for a total effective sentence of twenty-three years and six months.

After the trial court denied his motion for a new trial, Defendant filed a timely notice of appeal.

*Analysis*

When an accused challenges the length or manner of service of a sentence, this Court will review the trial court's decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In imposing a sentence, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement by the defendant in his own behalf. T.C.A. § 40-35-210(b). "[A] trial court is free to select any sentence within

the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Carter*, 254 S.W.3d at 343 (quoting T.C.A. § 40-35-210(d)). The principles of sentencing provide that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. *See* T.C.A. § 40-35-103(2), (4).

To provide meaningful appellate review, the trial court must state on the record its reasons for the sentence chosen, including the mitigating and enhancement factors it considered. T.C.A. § 40-35-210(e). A non-exclusive list of mitigating and enhancement factors are provided in Tennessee Code Annotated sections 40-35-113 and -114. The weighing of both mitigating and enhancement factors is left to the trial court's sound discretion, and a trial court's misapplication of a mitigating or enhancement factor will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709.

Defendant was convicted of one Class A felony, two Class B felonies, one Class C felony, and two Class A misdemeanors. The trial court carefully considered the evidence presented at trial and at the sentencing hearing. The trial court found one enhancement factor applied—that Defendant had a history of criminal behavior or convictions in addition to those necessary to establish his range. *See* T.C.A. § 40-35-114(1). The trial court found that no mitigating factors applied, or if they did, gave them very little weight. The trial court chose not to run the sentences consecutively. The trial court imposed within-range sentences for each conviction, and the record amply supports the trial court's sentencing decision. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE

- 6 -